IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 1753 |
| v. | ) ) | Magistrate Judge Maria Valdez |
| FLIPPEN FLYERS TRACK CLUB, a dissolved Illinois not-for-profit corporation, RONGKAI ZHAO, and RAY ZHAO | ) ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 82] and Plaintiff's Motion for Entry of Default Judgment Against Flippen Flyers Track Club [Doc. No. 87]. For the reasons that follow, Plaintiff's motion for summary judgment is granted, and Plaintiff's motion for default judgment is denied as moot.[1]

## BACKGROUND

On May 19, 2019, Defendant Rongkai Zhao – father of Defendant Ray Zhao ("Ray") – instituted a lawsuit in the Circuit Court of Cook County, Illinois, designated as Case No. 2019 L 005051 (the "*Zhao* lawsuit"). In that underlying state court action, the Zhaos allege that Ray (a minor at the time) was participating

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1

in a youth program at The Gymnastics Shop on April 14, 2019. The Zhaos allege that Ray was instructed to perform maneuvers on a trampoline, and, while executing a flip on the trampoline, he struck his head and neck causing paralysis and further injuries. In the *Zhao* lawsuit, Defendant Flippen Flyers Track Club ("Flippen Flyers") has been named as a defendant, and the Zhaos allege that Flippen Flyers' negligence led to Ray's injuries.[2] With respect to the *Zhao* lawsuit, Flippen Flyers claims to be an insured under certain insurance policies issued by Plaintiff Philadelphia Indemnity Insurance Company ("PIIC"). PIIC has agreed to provide Flippen Flyers with a defense in the *Zhao* lawsuit subject to a reservation of rights, including the right to withdraw from the defense. In this case, PIIC now moves for summary judgment, seeking a declaration that it owes no coverage to Flippen Flyers in connection with the *Zhao* lawsuit. PIIC has also moved for a default judgment against Flippen Flyers, seeking the same declaration as is sought in the summary judgment motion.

## DISCUSSION

### I.   FACTS[3]

PIIC issued a Commercial Lines Policy to USA Track & Field ("USATF") – a track & field organization – as the named insured bearing policy number PHPK

---

[2] The *Zhao* lawsuit also names as defendants The Gymnastics Shop, Gorgis Yelda, Jubas Properties, Inc., Julian Basler, USA Gymnastics, Inc., and USATF. [Doc. No. 68-3.]

[3] Unless otherwise noted, the following material facts are undisputed or are deemed admitted due to a party's failure to comply with Federal Rule of Civil Procedure 56(c)(1) or Local Rule 56.1. *See* Fed. R. Civ. P. 56(c)(1)(A)-(B); *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

2

1899025 for the effective period November 1, 2018 to November 1, 2019 (the "Primary Policy"). (Pl.'s LR 56.1 Statement at ¶ 5.) The Insuring Agreement in the Primary Policy provides, in relevant part:

> We [PIIC] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(*Id.* at ¶ 6.)

The Primary Policy contains a "Schedule Of Named Insureds Endorsement," which provides as follows:

> Schedule of Named Insureds
>
> USA Track & Field, Inc. (USATF) . . .
>
> USATF members, member clubs, directors, officers, officials, coaches, event owners, event organizers, race directors and volunteers, but only while acting in their capacity as such with respect to events or other approved activities that are sanctioned and insured by USATF.

(*Id.* at ¶ 7.)

The endorsement in the Primary Policy further provides:

> Sanctioned events include the actual athletic competitions, and all necessary and usual ancillary activities such as registration, warm-up and pre-event instruction, awards ceremonies and expositions. Sanctioned events also include USATF member club practices properly registered with USATF and other approved activities that are common to USATF member clubs.

(*Id.*)

The endorsement in the Primary Policy also contains an exclusion, stating as follows:

> Specifically excluded from sanctioned events are music concerts, parades or exhibitions requiring a separate remittance or ticket or involving other competitions or sporting activities not sanctioned by USATF.

(*Id.*)

PIIC also issued a Commercial Umbrella Liability Policy to USATF as the named insured bearing policy number PHUB652176 for the effective period November 1, 2018 to November 1, 2019 (the "Umbrella Policy"). (*Id.* at ¶ 8.) The Insuring Agreement of the Umbrella Policy provides, in relevant part:

> We [PIIC] will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit," whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury," or "property damage" or "personal and advertising injury" to which this insurance applies.

(*Id.* at ¶ 9.)

In addition to insuring USATF, the Umbrella Policy contains an "Additional Named Insureds" endorsement, which provides as follows:

> Additional Named Insureds
>
> The following descriptions are added to the schedule of named insureds.
>
> USATF members, member clubs, directors, officers, officials, coaches, event owners, event organizers, race directors and volunteers, but only while acting in their capacity as such with respect to events or other approved activities that are sanctioned and insured by USATF.

(*Id.* at ¶¶ 12-13.)

4

The endorsement in the Umbrella Policy further provides:

> Sanctioned events include the actual athletic competitions and all necessary and ancillary activities such as registration, warm-up, and pre-event instruction, award ceremonies, and expositions. Sanctioned events also include USATF member club practices properly registered with USATF and other approved activities [that] are common to USATF member clubs.

(*Id.* at ¶ 13.)

The endorsement in the Umbrella Policy also contains an exclusion, stating as follows:

> Specifically excluded from sanctioned events are music concerts, parades, or exhibitions requiring separate admittance or ticket or involving other competitions or sporting activities not sanctioned by USATF.

(*Id.*)

Defendant Flippen Flyers is a dissolved Illinois not-for-profit corporation with its principal place of business in Illinois. (*Id.* at ¶ 2.) Flippen Flyers was a youth-oriented, developmental track & field program. (*Id.*.) Joshua Bostick – Flippen[4] Flyers' founder and head coach – registered Flippen Flyers with USATF in 2013, approximately one year after organizing the program. (*Id.* at ¶ 45.) Bostick testified that the main reason he registered Flippen Flyers as a member club with USATF was to receive insurance under the PIIC policies. (Defs.' LR 56.1 Statement at ¶ 74.) As of April 14, 2019, Flippen Flyers was a member club with USATF. (*Id.*)

In or around the spring of 2019, Bostick received inquiries from the parents of Flippen Flyers members (including from Defendant Ray's mother) concerning off-

---

[4] Flippen is Bostick's father's last name. [Doc. No. 89-5 at 14:17-19.]

5

season activities their children could do for interim training. (Pl.'s LR 56.1 Statement at ¶ 23.) In response to the inquiries, Bostick sent e-mails to the parents advising them he found a gymnastics school in the suburban area. (*Id.*) Specifically, on March 5, 2019, Bostick sent an e-mail to the parents "about enrolling [their] athlete in a gymnastics tumbling class in the off season." [Doc. No. 89-4 at 2.] In the March 5, 2019 e-mail, Bostick forwarded an e-mail he had received from The Gymnastics Shop, indicating that the gymnastics facility was offering a tumbling class for Flippen Flyers members. (*Id.*) Bostick advised the parents that they could register their kids online for the tumbling class through The Gymnastics School. (*Id.*)

Bostick testified that he organized the tumbling class so that Flippen Flyers athletes could "work on their flexibility, their plyometrics, [and] things of that nature." (Defs.' LR 56.1 Statement at ¶ 70.) Bostick further testified that other athletes in the track and field community use tumbling to improve their abilities in jumping events. (*Id.* at ¶ 72.) When asked if he communicated with anyone at USATF about the tumbling class prior April 14, 2019, Bostick testified that he "did not talk to anybody from USATF prior to that date about the tumbling class or ever." (Pl.'s LR 56.1 Statement at ¶ 55; Doc. No. 89-5 at 69:5-11.) When asked if anyone at USATF ever approved Flippen Flyers' participation in the tumbling class, Bostick testified: "No. No one approved." (Pl.'s LR 56.1 Statement at ¶ 55; Doc. No. 89-5 at 70:2-5.) As detailed above, on April 14, 2019, Defendant Ray was paralyzed

6

while performing maneuvers on a trampoline at The Gymnastics Shop. (Pl.'s LR 56.1 Statement at ¶ 16.)

Sarah Austin – general counsel for USATF – testified that following the April 14, 2019 accident, after being informed by Bostick as to where and when the incident occurred, she "look[ed] in [USATF's] system to see whether or not there was anything for [Flippen Flyers] on that date in [USATF's] systems" and "[t]here was nothing sanctioned in [USATF's] system for that club on that date." (Pl.'s LR 56.1 Statement at ¶¶ 30-31; Doc. No. 89-7 at 45:12-16.) As a general matter, Austin testified as follows with respect to whether USATF would sanction an event held at a gymnastics location:

> Q. If a request to sanction an event, a training session at a gymnastics location came in, is that something that would need further approval or is that something that would have been approved [by USATF] without further discussion?
>
> A. It would not be approved without further discussion.
>
> Q. And so with that type of request, who would that have gone to, who would be included in that discussion?
>
> A. That wouldn't require further discussion. That's outside of the sports that [USATF] serve[s].

(Pl.'s LR 56.1 Statement at ¶ 41; Doc. No. 89-7 at 20:5-16.)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gupta v. Melloh*, 19 F.4th

7

990, 997 (7th Cir. 2021). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient." *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006) (quotations and alterations omitted).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

### III. ANALYSIS

The parties disagree as to whether Illinois state law or Indiana state law governs interpretation of the policies at issue, with PIIC arguing that Indiana law applies and Defendants arguing that Illinois law applies.[5] However, "[a] district

---

[5] As this Court is sitting in diversity, it is to interpret the policies in question in accordance with applicable state law. *See Kelly v. McGraw-Hill Companies, Inc.*, 885 F. Supp. 2d 885, 889 n.6 (N.D. Ill. 2012) ("In diversity cases such as this the *Erie v. Tompkins* doctrine

8

court is required to engage in a choice of law analysis only if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (citations and internal quotations omitted). *See also Brown v. Cont'l Cas. Co.*, 591 F. Supp. 3d 340, 347 (N.D. Ill. 2022) ("An Illinois court engages in a choice of law analysis only if there exists a conflict between forum law and the law of another State such that the conflict is outcome-determinative.") (citation omitted); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014) ("The Illinois courts hold that a choice-of-law determination is required only when the moving party has established an actual conflict between state laws.") (citations and internal quotations omitted). Here, there is no conflict between the laws of Illinois and Indiana with respect to the legal principles pertinent to the disposition of the instant summary judgment motion.

Under both Indiana and Illinois law, the rules applicable to contract interpretation govern the interpretation of an insurance policy. *Compare Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018) *with Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 209 (Ill. 2021). Further, under both Indiana and Illinois law, a court's primary objective when construing an insurance policy is to ascertain and give effect to the

---

commands a federal court to apply state substantive law, including the rules of contract interpretation.") (citation omitted); *Pamado, Inc. v. Hedinger Brands, LLC*, 785 F. Supp. 2d 698, 705-06 (N.D. Ill. 2011) ("In diversity cases such as this one, the Court applies federal procedural law and state substantive law. Rules of contract interpretation are treated as substantive.") (citations omitted).

9

intention of the parties, as expressed in the policy language. *Compare Westfield Companies v. Knapp*, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) *with Sproull*, 184 N.E.3d at 209. Under the law of both states, if the language in an insurance contract is clear and unambiguous, it should be given its plain and ordinary meaning. *Compare Erie*, 99 N.E.3d at 630 *with Sproull*, 184 N.E.3d at 209. Additionally, under both Indiana and Illinois law, courts may consider extrinsic evidence in assessing an insurer's duty to defend. *See Indiana Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1269 (Ind. Ct. App. 2009) (courts can consider evidence extrinsic to the underlying complaint when assessing an insurer's duty to defend, including insured's self-serving testimony denying intent and favoring coverage); *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 147 (Ind. Ct. App. 2006) ("We determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation."); *Sentry Ins. v. Cont'l Cas. Co.*, 74 N.E.3d 1110, 1130 (Ill. App. Ct. 2017) (in context of an insurer's duty to defend "the court in [a] declaratory judgment action may consider extrinsic evidence that would otherwise be appropriate at that stage of the proceedings and that does not determine a crucial issue in the underlying litigation"); *Freeburg Cmty. Consol. Sch. Dist. No. 70 v. Country Mut. Ins. Co.*, 183 N.D.3d 1020, 1043 (Ill. App. Ct. 2021) ("[W]e find nothing inappropriate in RSUI's consideration of extrinsic evidence in denying coverage under the policy, and we find no error in the circuit court's apparent consideration of extrinsic evidence in ruling on the motion to dismiss.").

PIIC argues that "the April 14, 2019 gymnastics class is an 'other' sporting activity not sanctioned by USATF, and expressly excluded from the definition of sanctioned events within the additional named insured endorsements of the PIIC Policies." (Pl.'s Memo. at 14-15.) The Court agrees. As recited above, the Primary Policy specifically excludes from coverage events "involving other competitions or sporting activities not sanctioned by USATF." (Pl.'s LR 56.1 Statement at ¶ 7.) In an identical fashion, the Umbrella Policy specifically excludes from coverage events "involving other competitions or sporting activities not sanctioned by USATF." (*Id.* at ¶ 13.) The accident underlying this suit occurred at a gymnastics school during a gymnastics tumbling class. (Pl.'s LR 56.1 Statement at ¶ 23; Doc. No. 89-4 at 2.) The Court finds that, based on the factual record and the plain language found in the exclusions, the gymnastics tumbling class held at a gymnastics school falls under "other competitions or sporting activities" that USATF, a track & field organization, does not sanction in general (Doc. No. 89-7 at 20:5-16) and did not sanction in this specific instance (Doc. No. 89-5 at 70:2-5; Doc. No. 89-7 at 45:12-16). Accordingly, per the terms of the policies, the gymnastics tumbling class was not a sanctioned event, Flippen Flyers was not insured with respect to any bodily injury that occurred at the tumbling class, and PIIC has no duty to defend Flippen Flyers in the *Zhao* lawsuit. Thus, PIIC is entitled to judgment as a matter of law on Counts I and II of its Second Amended Complaint and a declaration that it has no duty to defend Flippen Flyers in the *Zhao* lawsuit under either the Primary Policy or the Umbrella Policy.

## IV. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

In its motion for a default judgment against Flippen Flyers, PIIC seeks the same declaration as it seeks in its motion for summary judgment. [*Compare* Doc. No. 82 at 2 *with* Doc. No. 87 at 4.] As the Court has decided this case on the merits in PIIC's favor in adjudicating PIIC's motion for summary judgment, PIIC's motion for default judgment will be denied as moot.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Doc. No. 82] is granted, and Plaintiff's Motion for Entry of Default Judgment Against Flippen Flyers Track Club [Doc. No. 87] is denied as moot. The Court hereby declares as follows: (1) Philadelphia Indemnity Insurance Company has no duty to defend or indemnify Flippen Flyers Track Club under the pertinent Primary and Umbrella Policies in connection with the lawsuit pending in the Circuit Court of Cook County, Illinois, designated as Case No. 2019 L 005051; and (2) Philadelphia Indemnity Insurance Company can withdraw its defense of Flippen Flyers Track Club in the lawsuit pending in the Circuit Court of Cook County, Illinois, designated as Case No. 2019 L 005051.

**SO ORDERED.**                             **ENTERED:**

**DATE:**   **February 3, 2023**        _____
                                         **HON. MARIA VALDEZ**
                                         **United States Magistrate Judge**